IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

     v.                                    Criminal No. 3:23CR04

LARRY S. HAWKES,

     Petitioner.

## MEMORANDUM OPINION

Larry S. Hawkes, a federal inmate proceeding *pro se*, brings this motion pursuant to

28 U.S.C. § 2255 ("§ 2255 Motion," ECF No. 41.) Hawkes raises the following grounds for

relief:

Claim One    "The judge improperly participated in the plea bargaining process. In a pretrial hearing on April 14th, 2023, the judge used coercive language, including threats of further prosecution, to induce me to accept a plea offer I otherwise would have rejected." (ECF No. 41, at 4.)[1]

Claim Two    "The plea was not knowing and voluntary. Until the sentencing hearing, I believed I had pled guilty to Count 1 of the indictment (conspiracy to distribute cocaine) rather than Count 4 (distribution of fentanyl). Had I been aware of the nature of the statute to which I was pleading, I would have immediately withdrawn my plea. Further, the judge was not sufficiently thorough in the plea colloquy to ensure that I was aware of the nature of Count 4, both in terms of its underlying elements and its potential penalties." (ECF No. 41, at 5.)

Claim Three    "Ineffective Assistance of Counsel."

       (a)    "Counsel failed to object to the judge's participation in the plea negotiations." (ECF No. 41, at 7.)

---

[1] Hawkes's assertion that Claim One arises from errors at an April 14, 2023 hearing appears to be a clerical or typographical mistake. Indeed, as discussed above, the initial Rule 11 hearing occurred on April *13*, 2023, and the Court did not reconvene until April *17*, 2023. It appears to the Court that Hawkes intended for Claim One to focus on the April 13 hearing because it is closer in time to April 14 and because, at that hearing, the Court discussed the possibility of a superseding indictment, which Hawkes may be alluding to in using the term "further prosecution." (ECF No. 41, at 4.)

(b)    Counsel "failed to . . . ensure that I was informed of the specific charges I was pleading to, and the penalties associated with those charges." (ECF No. 41, at 7.)

(c)    "Counsel instructed me to 'just say yes' to all questions during the plea colloquy, ignoring the fact that I was clearly confused." (ECF No. 41, at 7.)

(d)    "Counsel failed to timely appeal despite instructions." (ECF No. 41, at 7.)

The Government responded, asserting that the claims raised in the § 2255 Motion are without merit. (ECF No. 47.) Despite the provision of notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (ECF No. 48), Hawkes failed to file any response. Nevertheless, the Court provided Hawkes an additional opportunity to expand the record with respect to a claim that his attorney failed to file an appeal on his behalf. (ECF No. 52.) Hawkes once more failed to respond. For the reasons set forth below, the § 2255 Motion (ECF No. 41) will be DENIED.[2]

### I. Procedural History

#### A. Indictment and Guilty Plea

On January 10, 2023, a grand jury returned a five-count indictment charging Hawkes with: (1) conspiracy to distribute and possess with intent to distribute five or more kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846 ("Count One"); (2) distribution of a mixture and substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Count Two"); (3) distribution of a mixture and substance containing a detectable amount of fentanyl, heroin, and cocaine hydrochloride, in violation of 21 U.S.C.

_____

[2] The Court employs the pagination assigned by the CM/ECF docketing system and corrects the capitalization, misspellings, and grammatical errors in quotations from Hawkes's submissions.

§§ 841(a)(1) and 841(b)(1)(C) ("Count 3"); (4) distribution of 40 grams or more of a mixture and substance containing a detectable amount of fentanyl and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) ("Count Four"); and, (5) possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count Five"). (ECF No. 1, at 1–3.)

On April 13, 2023, Hawkes appeared before the Court, represented by Attorney Charles Gavin, to enter a guilty plea consistent with a Plea Agreement he had reached with the Government. (ECF No. 23; *see* ECF No. 25.) Pursuant to the Plea Agreement, Hawkes pled guilty to only Count Four of the Indictment. (ECF No. 25, at 1.) The Plea Agreement explicitly stated that Count Four had charged Hawkes with "Distribution of forty grams or more of a mixture and substance containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (Fentanyl), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)." (ECF No. 25, at 1.) It further stated that the penalties associated with that offense were "a mandatory minimum of five years of imprisonment and a maximum term of imprisonment for 40 years, a fine of up to $5,000,000, and a $100 special assessment pursuant to 18 U.S.C. § 3013, and a supervised release term of at least 4 years." (ECF No. 25, at 1.) With respect to Hawkes's specific penalty exposure, the Plea Agreement explained that the parties agreed that the drug weight attributable to Hawkes would "fall within Offense Level 30" and agreed to "recommend to the Court the imposition of a sentence of 102 months' incarceration." (ECF No. 25, at 3.) In signing the Plea Agreement, Hawkes attested that his attorney had rendered effective assistance. (ECF No. 25, at 2.)

In the Statement of Facts that accompanied the Plea Agreement, Hawkes agreed that if the matter had proceeded to trial, "the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence" (ECF No. 26, at 1):

1.    On or about November 15, 2021, LARRY S. HAWKES did knowingly and intentionally distribute 40 grams or more of a mixture and substance containing a detectable amount of Fentanyl, a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) as set forth in Count Four of the pending criminal Indictment.

2.    In 2021, law enforcement officers with the Chesterfield County Police Department and the Drug Enforcement Administration, as well as other state and local law enforcement agencies, received information indicating that the defendant and others were involved in the distribution of narcotics, specifically cocaine, heroin, and fentanyl, in the Richmond, Virginia area and elsewhere.

3.    Between October 12, 2021 and December 9, 2021, a series of controlled purchases of heroin, cocaine, and fentanyl were made from the defendant utilizing a cooperating source or sources (hereafter, CS), acting under the direction of law enforcement.    Prior to and after each controlled purchase, the CS was searched for United States currency and narcotics with negative results. In addition, telephone calls and text messages were exchanged between HAWKES and the CS confirming the sale and delivery of the controlled substances.

4.    During each of the controlled purchases as set forth in the pending Indictment and herein, the CS handed the defendant the agreed upon quantity of United States currency and in exchange, the defendant handed the CS the agreed upon quantity of suspected narcotics, to wit: fentanyl, heroin, and/or cocaine. Each controlled purchase was audio and video recorded, and surveillance teams observed the defendant leaving his residence immediately prior to each controlled buy and observed him travel to meet with the CS at a predetermined location in the Eastern District of Virginia.

5.    Immediately after each controlled buy, the CS met with law enforcement and turned over the narcotics that had been purchased from HAWKES. As noted, the CS and the CS vehicle were searched for narcotics and currency with negative results (i.e. no drugs or United States currency were found).

6.    The suspected narcotics that were purchased from HAWKES were sent to the Virginia Department of Forensic Science for analysis by a forensic scientist.  The results of these analyses are as follows:

| Date | Controlled Substance | Weight |
|---|---|---|
| October 12, 2021 | Cocaine Hydrochloride | 27.11 grams |
| October 26, 2021 | Cocaine Hydrochloride | 25.07 grams |
| | Parafluorofentanyl/Fentanyl and Heroin mixture | 22.80 grams |
| November 15, 2021 | Fentanyl/Heroin Mixture | 59.45 grams |
| December 9, 2021 | Heroin/Cocaine Mixture | 30.14  grams |

7.    On September 27, 2022, a CS acting under the direction of law enforcement, contacted HAWKES via cellular telephone and ordered one kilogram

of cocaine from HAWKES. Telephone analyses and recordings confirmed the contact between HAWKES and the CS regarding the delivery of the drugs. HAWKES then contacted another individual and instructed that person to deliver a kilogram of cocaine to the CS. Telephone analyses confirm[] that HAWKES contacted this individual to deliver the drugs to the CS. Shortly thereafter, the individual arrived at the meeting location with another person and was arrested while in possession of the following narcotics:

| Controlled Substance | Weight |
| --- | --- |
| Cocaine Hydrochloride | 1041.41 grams |
| Parafluorofentanyl and Fentanyl | 32.81 grams |
| Fentanyl and Heroin | 15.31 grams |

8.      Multiple cooperating witnesses were interviewed who were deemed reliable by law enforcement based on statements that were made against their own penal interests as well as based on independently corroborated information. Law enforcement was advised that beginning in June 2021 and continuing up through and including September 27, 2022, they, along with the defendant, LARRY HAWKES, acquired and distributed more than three kilograms of cocaine hydrochloride.

9.      The parties stipulate and agree that the quantity of cocaine hydrochloride that was reasonably foreseeable to HAWKES is at least three kilograms but less than five kilograms of cocaine hydrochloride, a Schedule II controlled substance.

10.     The parties stipulate and agree that the quantities of cocaine, fentanyl, parafluorofentanyl, and heroin as described herein and in paragraphs 6 and 7, are consistent with the intent to distribute and inconsistent with personal use.

(ECF No. 26, at 1–4.)

Throughout the initial Rule 11 hearing on April 13, 2023, the Court engaged with

Hawkes and his attorney to ensure that Hawkes understood the nature and consequences of

pleading guilty as well as the fact that the choice to plead guilty was his alone. The following

relevant exchanges occurred:

THE COURT:      So I want you to understand that. And you have every right to go to trial. Nobody's going to stop you from going to trial; it's your right. That's why I'm here, to try cases. So there's nothing bad about going to trial. So I don't want you to think I'm saying that either. [The prosecutor], what she told you is that there's going to be a superseding indictment. So you have been told by your—well, do you know what might happen then?

DEFENDANT:        Well, that's what I was saying.  With Mr. Gavin, that's what I was trying to establish, whether I was being superseded or was I being enhanced with the plea.  I mean, if I'm being enhanced with the plea, then I don't see where I should take the plea.

THE COURT:        Well, I can't give you legal advice.  What I can say is that—what I just said, about how it works.  And nothing in the guidelines is guaranteed, including what I might do with recommended guidelines.  It doesn't happen that way.

But what I will say also, just so you hear me say it, is that, in my experience in 20 years, what a superseding indictment involves is more and worse charges.

DEFENDANT:        Yes, ma'am.

THE COURT:        So I just want you to know that.  You have every right not to take a plea.  And I don't care, really.  But I want to make sure that you understand the decisions that you're making and the natural consequences.

So you understand all that?

DEFENDANT:        Not really, but --

THE COURT:        Oh, come on, Mr. Hawkes.    What don't you understand?  It's not whether or not you like the answer.

DEFENDANT:        Yes, ma'am.  I understand what you're saying, as far as that --

THE COURT:        You disagree.  You wish it would have gone a different way.  That's not the same as not understanding.

Do you understand what I'm saying?

DEFENDANT:        As far as being superseding?

THE COURT:        Everything I've said.

DEFENDANT:        No, ma'am, I don't understand everything you said.

THE COURT:        Well, tell me what you think is going to happen next, if we schedule a trial.  You tell me.

DEFENDANT:        Well, I understand that part, I'll be superseded.  But I'm saying -- my question is if I take the plea, will I be superseded?  Will I have more or less or whatever?  I'm just saying, I wouldn't want to get locked into a plea.

6

> THE COURT:        What do you think I just said to you about that?
>
> DEFENDANT:        Well, you said there was no guarantee.
>
> THE COURT:        Right.    There's no guarantee that you will be enhanced.  They're giving you legal advice, the best that they have.  It's not advice you like.
> A good lawyer and counselor at law does not just say what a client wants to hear, because that is essentially malpractice; they have to say what could happen. Even if they're not any happier about it than their client is.

(ECF No. 44, at 8–11.)

The Court then took a recess so Hawkes could discuss the plea with his family and attorney.

(ECF No. 44, at 11.)  After the recess, the Court questioned Hawkes about his satisfaction with

counsel and whether he truly desired to plead guilty:

> THE COURT:        But the problem is I don't want to make you plead guilty ever.  There's no way you need to feel that.  And I'm concerned about this change of decision with an attorney who, let me tell you, I have no qualms about Mr. Gavin's capability or his intelligence or his zealousness on your behalf . . . .
> But it is the case that sometimes folks just don't—you know, they don't gel together.  It's not because the attorney's bad or the client's bad; it's just because it doesn't work.  And we want to be sure that you get effective assistance and that you fully understand what you're doing.
>
> DEFENDANT:        Yes, ma'am.
>
> . . . .
>
> THE COURT:        So Mr. Hawkes, I want you to be able to do what you want in the case.  I mean, you have a right to the representation.  You have a right to plead guilty.  You have the right to plead not guilty and go to trial.
> But I really think that this is too swift and too severe of [a] turnaround for me to be able to take the plea with Mr. Gavin as your attorney today.  You were about to say something.
>
> DEFENDANT:        Yes, ma'am.  I understand what you're saying.  I understand.  But it was just the way -- we had a communication gap.  And I understand.  Like I said, I didn't want to understand -- I wanted -- that I'd be locked into the plea.  And it was explained to me, you know, so I understand.
>
> THE COURT:        Okay.

7

> DEFENDANT:        I'm ready to move forward with Mr. Gavin.

(ECF No. 44, at 13, 15.)

Despite Hawkes's representation that he was prepared to proceed, the Court concluded

that a "cool-off period" to allow Hawkes and his attorney to communicate further was in

Hawkes's best interest and accordingly continued the hearing for four days, until April 17, 2023.

(ECF No. 44, at 16–19.)

When Hawkes appeared again on April 17, the Court once more engaged with him and

his attorney regarding the prospective guilty plea. The Court discussed the Plea Agreement and

Statement of Facts and confirmed that Hawkes had reviewed it, signed it, and believed it to be

true and correct. (*See* ECF No. 45, at 22.) The following relevant exchanges occurred:

> THE COURT:        All right.   Mr. Hawkes, now I'll ask you to step forward.
> So Mr. Hawkes, we're going to talk again about what we talked about on Friday. So what I want you to know is that you're not required to plead guilty. You're not required to take this plea agreement. And the thing I really want to hear from you about is your working relationship with Mr. Gavin, because there was representation on Friday at the beginning of the hearing that you-all were not communicating, and you said differently at the end of the hearing.
> But I need to be sure that you're still like you were at the end of the hearing. We gave you this period of time to talk about it. So can you just say to me how you feel about Mr. Gavin's representation?

> DEFENDANT:        I'm satisfied with Mr. Gavin.

> THE COURT:        Okay.

> DEFENDANT:        Yes, ma'am.

> THE COURT:        And you're satisfied you understand everything that he talked to you about?

> DEFENDANT:        Yes, ma'am.

> THE COURT:        And you understand what he went through with you about the plea and the statement of facts?

DEFENDANT:    Yes, ma'am.  We got through that.  We wasn't communicating, but …

THE COURT:    But then later on, you were?

DEFENDANT:    Yes, ma'am.

THE COURT:    I shouldn't finish that for you.  But you've gotten through them now?

DEFENDANT:    Yes, ma'am.

. . . .

THE COURT:    All right.  So I'm going to confirm that you know the charge and potential penalties.  As I see it, you're proposing to plead guilty to Count Four, which is distribution of 40 grams or more of a mixture and substance containing a detectable amount of N-Phenyl-N propenamide -- I don't know what that is -- fentanyl, in violation of 21 U.S.C. 841(a) and 841(b).  The maximum possible penalties are a mandatory minimum term of 5 years of imprisonment and a maximum term of 40 years, a fine of up to $5 million, a $100 special assessment, and a supervised release term of at least four years which would follow any jail time imposed.  Is that your understanding of the charge and the potential penalties?

DEFENDANT:    Yes, ma'am.

. . . .

THE COURT:    Are you entirely satisfied with what your attorney has done for you?  Do you believe Mr. Gavin has done all you needed so you can make an informed decision about how you want to proceed in your case?

DEFENDANT:    Yes, ma'am.

THE COURT:    Do you understand, though, that the decision of whether or not to plead guilty can only be yours; it can't be that of your attorney or of anybody else you know?

DEFENDANT:    Yes, ma'am.

. . . .

THE COURT:    Are you intending to plead guilty to this charge because you are in fact guilty of it?

DEFENDANT:    Yes, ma'am.

THE COURT:        So I'm going to let you talk to your lawyer, because there's a little bit of hesitation. So I don't want you pleading guilty if you're not guilty of it. All right? So you can talk to your lawyer and take a minute.

DEFENDANT:        I'm guilty of it, Your Honor.

. . . .

THE COURT:        Mr. Hawkes, this is where I ask you how is it that you plead to Count Four of the indictment charging distribution or 40 grams or more of a mixture and substance containing fentanyl, guilty or not guilty?

DEFENDANT:        Guilty.

. . . .

THE COURT:        And how about you, Mr. Hawkes, is there anything other than that change [in the Statement of Facts] that we're already accepting that you think is wrong, that should be added in or taken out?

DEFENDANT:        No, ma'am.

THE COURT:        Did you sign this document because the information in it is true?

DEFENDANT:        Yes, ma'am.

THE COURT:        So, sir, this is the moment where I can make my finding of guilt. And so this will be the last time you can say -- you could choose to withdraw your guilty plea. Are you prepared for me to go ahead and make the finding?

DEFENDANT:        Yes, ma'am.

(ECF No. 45, at 4–5, 10–13, 21–22.)

The Court accepted Hawkes's plea as knowing and voluntary and found that Hawkes was guilty of Count Four. (ECF No. 45, at 22–23.)

### B. Sentencing

Before sentencing, the United States Office of Probation and Pretrial Services prepared a Presentence Investigation Report ("PSR"). (ECF No. 29.) Hawkes's Base Offense Level was

28, and his Adjusted Offense Level—the level the parties agreed would apply in the Plea Agreement—was 30 based on a converted drug weight of at least 1,000 kilograms but less than 3,000 kilograms. (ECF No. 29 ¶¶ 14, 19.) Hawkes received three levels of reductions for acceptance of responsibility (ECF No. 29 ¶¶ 21–22), resulting in a Total Offense Level of 27 (ECF No. 29 ¶ 23). Based on a host of previous convictions and a two-point addition for "commi[ssion] of the instant offense while under a criminal justice sentence" for another conviction, Hawkes's criminal history computation resulted in a placement in category III. (ECF No. 29 ¶¶ 35–37.) On this basis, Hawkes's sentencing guidelines range was 87–108 months of imprisonment, with a statutory restrictive range of no less than five years of imprisonment to a maximum of forty years of imprisonment. (ECF No. 29, at 22.)

On July 24, 2023, the parties filed their respective Positions on Sentencing. (ECF No. 31; ECF No. 32.) The parties explained that, although they had previously agreed to recommend a sentence of 102 months of incarceration, they had revised that to a recommendation of 97 months based on a then-impending change to the United States Sentencing Guidelines. (ECF No. 31, at 1–2; ECF No. 32, at 1–2.) Specifically, under the (then not-yet-implemented) November 2023 guidelines, Hawkes would be subject to only one additional criminal history point for committing the offense in question while under a term of supervision, resulting in a criminal history category of II and a guidelines range of 78–97 months of incarceration. (ECF No. 31, at 1; ECF No. 32, at 2.)

On August 3, 2023, the Court held a sentencing hearing. (ECF No. 38.) There, the parties reiterated to the Court their reasons for diverging from their original recommendation. (ECF No. 46, at 2, 17–25.) Ultimately, despite expressing concern at Hawkes's significant

criminal history, the Court accepted the parties' joint recommendation and sentenced Hawkes to 97 months of incarceration. (*See* ECF No. 38, at 2; ECF No. 39, at 2; ECF No. 46, at 25–36.)

## C. <u>Claims for Relief</u>

On January 19, 2024, Hawkes filed the § 2255 Motion, requesting that his conviction be vacated, raising the following claims for relief:

Claim One    "The judge improperly participated in the plea bargaining process. In a pretrial hearing on April 14th, 2023, the judge used coercive language, including threats of further prosecution, to induce me to accept a plea offer I otherwise would have rejected." (ECF No. 41, at 4.)[3]

Claim Two    "The plea was not knowing and voluntary. Until the sentencing hearing, I believed I had pled guilty to Count 1 of the indictment (conspiracy to distribute cocaine) rather than Count 4 (distribution of fentanyl). Had I been aware of the nature of the statute to which I was pleading, I would have immediately withdrawn my plea. Further, the judge was not sufficiently thorough in the plea colloquy to ensure that I was aware of the nature of Count 4, both in terms of its underlying elements and its potential penalties." (ECF No. 41, at 5.)

Claim Three    "Ineffective Assistance of Counsel."

(a)    "Counsel failed to object to the judge's participation in the plea negotiations." (ECF No. 41, at 7.)

(b)    Counsel "failed to . . . ensure that I was informed of the specific charges I was pleading to, and the penalties associated with those charges." (ECF No. 41, at 7.)

(c)    "Counsel instructed me to 'just say yes' to all questions during the plea colloquy, ignoring the fact that I was clearly confused." (ECF No. 41, at 7.)

(d)    "Counsel failed to timely appeal despite instructions." (ECF No. 41, at 7.)

---

[3] Hawkes's assertion that Claim One arises from errors at an April 14, 2023 hearing appears to be a clerical or typographical mistake. Indeed, as discussed above, the initial Rule 11 hearing occurred on April *13*, 2023, and the Court did not reconvene until April *17*, 2023. It appears to the Court that Hawkes intended for Claim One to focus on the April 13 hearing because it is closer in time to April 14 and because, at that hearing, the Court discussed the possibility of a superseding indictment, which Hawkes may be alluding to in using the term "further prosecution." (ECF No. 41, at 4.)

On September 2, 2025, observing that in support of Claim Three (d) "Hawkes [had] offer[ed] only an unsworn and conclusory allegation that his attorney . . . failed to file an appeal on his behalf despite Hawkes having directed him to do so" (ECF No. 52, at 2), the Court issued a Memorandum Order directing Hawkes to, within fourteen days, expand the record by submitting an affidavit and any relevant documents supportive of his claim. (ECF No. 52, at 2.) The Court warned Hawkes that his failure to respond would "result in summary dismissal of Claim Three (d)." (ECF No. 52, at 3.) Despite this clear warning, Hawkes has not filed a response to the September 2, 2025 Memorandum Order.

## II.  Challenges to Guilty Plea

Claims One and Two relate to the validity of Hawkes's guilty plea, specifically with respect to the Court's alleged participation in the plea process (Claim One) as well as the voluntariness of the plea (Claim Two). (ECF No. 41, at 4–5.)

### A.  Relevant Legal Standards

#### 1.  Federal Rule of Criminal Procedure 11(c)(1)

Rule 11(c)(1) of the Federal Rules of Criminal Procedure commands that "[t]he court must not participate in [plea agreement] discussions." Fed. R. Crim. P. 11(c)(1). This "prohibition on judicial involvement in plea negotiations guards against the high and unacceptable risk of coercing a defendant to enter into an involuntary guilty plea." *United States v. Bradley*, 455 F.3d 453, 460 (4th Cir. 2006) (citations and internal quotation marks omitted). To determine whether impermissible interference occurred, the Court must "look to 'judicial comments' and other indicia of involvement, such as whether the court influenced or 'initiated plea discussions.'" *United States v. Rillo*, 664 F. App'x 311, 314 (4th Cir. 2016) (quoting *Bradley*, 455 F.3d at 462). A violation of Rule 11(c)(1) is possible "even in cases where the

district judge technically did not participate in discussions with a view toward a[ ] [plea] agreement." *United States v. Cannady*, 283 F.3d 641, 644 (4th Cir. 2002) (alterations in original) (citation omitted) (internal quotation marks omitted).[4]

### 2. <u>Statements at Rule 11 Hearings</u>

"A petitioner who has pleaded guilty may file a § 2255 motion to raise a claim that his plea was not voluntary and intelligent." *Bousley v. United States*, 523 U.S. 614, 618–19 (1998). In reviewing such a claim, however, the representations of the convicted defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Indeed, in light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any

---

[4] In *Cannady*, the United States Court of Appeals for the Fourth Circuit concluded that the presiding district judge had not technically violated Rule 11 because at the time his comments were made during Rule 11 proceedings, "the parties had reached a definite agreement that had been reduced to writing and executed by Cannady . . . all without any direct involvement by the district judge." 283 F.3d at 644. However, the panel went on to consider whether the district judge's comments during the Rule 11 proceedings coerced Cannady into pleading guilty. *Id.* at 645. The Court concluded that no violation of Rule 11 had occurred because "these comments occurred during the district judge's attempts to ensure that Cannady was knowingly and voluntarily entering into the agreement, which the judge, of course, was required to do." *Id.* at 645–46 (citations omitted).

§ 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22.

## B. **Claim One**

In Claim One, Hawkes asserts that the Court improperly participated in the plea-bargaining process. (ECF No. 41, at 4.) This claim lacks merit. As discussed above, the Court's involvement in plea discussions was limited to ensuring that Hawkes understood that he was not required to plead guilty and that it was his right to go to trial. Indeed, the Court repeatedly informed Hawkes that this choice was his to make and that it had no interest or stake in his ultimate decision. The Court also continued the plea hearing for four days to permit Hawkes and his attorney to further discuss the plea and its implications after learning of a potential breakdown in communication between the two. Finally, contrary to Hawkes's assertion, the Court did not threaten Hawkes with further prosecution should he decline to plead guilty; rather, to ensure that Hawkes "underst[ood] the decisions that [he was] making and the natural consequences[,]" the Court merely acknowledged that the Government had informed Hawkes that it intended to pursue a superseding indictment against him. (*See* ECF No. 44, at 9.)

The Court's oversight of Hawkes's guilty plea was comparable to judicial conduct deemed Rule 11 compliant by the Fourth Circuit in *United States v. Davis*:

> Here, the district court engaged Davis to ensure that he understood the consequences of pleading versus going to trial in the context of the potential penalties Davis faced. The court made clear that the choice was Davis's. And after Davis accepted the plea agreement, the district court engaged in a thorough Rule 11 colloquy, inquiring about whether anyone had threatened Davis to get him to plead guilty, whether he was pleading of his own free will, and whether he believed pleading was in his best interest.

529 F. App'x 375, 379–80 (4th Cir. 2013) (citations and footnote omitted). The Court's interactions with Hawkes were, contrarily, *unlike* cases in which the Fourth Circuit has found

15

impermissible judicial interference with the plea process. *See, e.g., United States v. Braxton*, 784 F.3d 240, 242 (4th Cir. 2015) (finding Rule 11 error where district court "repeatedly spoke in favor of the plea agreement, opining that it would be best for [the defendant] to take the government's offer and forgo trial"); *United States v. Sanya*, 774 F.3d 812, 816 (4th Cir. 2014) (finding Rule 11 error where, before plea deal had been struck, district court repeated that a plea was in the defendant's best interest, strongly suggested the defendant would receive a more favorable sentence if he pled guilty, and commented on the strength of the Government's case); *Bradley*, 455 F.3d at 462 (finding Rule 11 error where the district court "initiated plea discussions, advised the Defendants that they might 'be better off pleading to the indictment,' [and] suggested that they would likely receive life sentences if they went to trial").

Accordingly, the Court did not violate Rule 11 of the Federal Rules of Criminal Procedure, and Claim One will be DISMISSED.

## C. <u>Claim Two</u>

Claim Two reads as follows: "The plea was not knowing and voluntary. Until the sentencing hearing, I believed I had pled guilty to Count 1 of the indictment (conspiracy to distribute cocaine) rather than Count 4 (distribution of fentanyl). Had I been aware of the nature of the statute to which I was pleading, I would have immediately withdrawn my plea. Further, the judge was not sufficiently thorough in the plea colloquy to ensure that I was aware of the nature of Count 4, both in terms of its underlying elements and its potential penalties." (ECF No. 41, at 5.)

This claim is without merit. First, as to Hawkes's understanding of the charge to which he was pleading guilty, the Plea Agreement—which Hawkes signed and attested to having understood and voluntarily agreed to (ECF No. 25, at 12)—clearly states that Hawkes had agreed

to plead guilty to Count Four of the Indictment, which had "charge[d] [him] with Distribution of forty grams or more of a mixture and substance containing a detectable amount of . . . (fentanyl), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)." (ECF No. 25, at 1.) It further stated that the penalties for that offense were "a mandatory minimum term of five years of imprisonment and a maximum term of imprisonment for 40 years, a fine of up to $5,000,000, a $100 special assessment pursuant to 18 U.S.C. § 3013, and a supervised release term of at least 4 years." (ECF No. 25, at 1.)

The record also fails to support Hawkes's claim that the Court failed to offer him adequate instruction as to the nature of his plea. At the Rule 11 hearing, the Court reiterated the nature of the charge and the potential penalties Hawkes faced, and Hawkes affirmed that he understood:

> THE COURT:        All right. So I'm going to confirm that you know the charge and potential penalties. As I see it, you're proposing to plead guilty to Count Four, which is distribution of 40 grams or more of a mixture and substance containing a detectable amount of N-Phenyl-N propenamide—I don't know what that is—fentanyl, in violation of 21 U.S.C. 841(a) and 841(b). The maximum possible penalties are a mandatory minimum term of 5 years of imprisonment and a maximum term of 40 years, a fine of up to $5 million, a $100 special assessment, and a supervised release term of at least four years which would follow any jail time imposed. Is that your understanding of the charge and the potential penalties?
>
> DEFENDANT:        Yes, ma'am. (ECF No. 45, at 10.)

Hawkes's conclusory allegations in the § 2255 Motion are insufficient to overcome his agreement to the Plea Agreement and Statement of Facts and his sworn statements at the Rule 11 hearing. Indeed, the record fully demonstrates the falsity of Hawkes's allegations that his plea was not knowing and voluntary or that the Court insufficiently explained any part of the charge or penalties associated with it. *See Lemaster*, 403 F.3d at 221–22 (opining that "a defendant's solemn declarations in open court affirming a [plea agreement] . . . carry a strong presumption of

17

verity" presenting "a formidable barrier [to overcome] in any subsequent collateral proceedings" and that, "in the absence of extraordinary circumstances . . . a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements" (first alteration in original) (some internal quotation marks omitted) (citations omitted)). Accordingly, Claim Two is without merit and will be DISMISSED.

### III. Ineffective Assistance of Counsel

Within Claim Three, Hawkes raises four subclaims, all under the umbrella of ineffective assistance of counsel. He asserts that his attorney was ineffective for (a) failing to object to the Court's allegedly impermissible participation in the entry of his plea; (b) failing to ensure he understood the count to which he was pleading guilty and the potential penalties he faced; (c) instructing him to "just say yes" to the Court's questions during the plea colloquy, even when he was confused; and, (d) failing to appeal the conviction despite Hawkes requesting that he do so. (ECF No. 41, at 4–7.) As explained below, each claim is without merit.

#### A. Ineffective Assistance of Counsel Standard

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component, meanwhile, requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

18

probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In

analyzing ineffective assistance of counsel claims, it is not necessary to determine whether

counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court has modified the second prong of

*Strickland* to require a showing that "there is a reasonable probability that, but for counsel's

errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*

*v. Lockhart*, 474 U.S. 52, 59 (1985). A petitioner's assertion that but for counsel's alleged error

he would have pled not guilty is not dispositive of the issue. *See United States v. Mora-Gomez*,

875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry," *see Hooper v.*

*Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988), "and dependent on the likely outcome of a trial

had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007)

(quoting *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances

surrounding a petitioner's plea, including the likelihood of conviction and any potential

sentencing benefit to pleading guilty. *Id.* at 369–70. And, as stated above, in conducting the

foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the

plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a

formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63,

73–74 (1977). Indeed, generally, "in the absence of extraordinary circumstances, the truth of

sworn statements made during a Rule 11 colloquy is conclusively established, and a district court

should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies

on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221–22.

**B.  Claim Three (a)**

With respect to Claim Three (a), for the reasons stated above in conjunction with Claim

One, the Court did not impermissibly participate in the plea entry process, and counsel's failure

to object to any supposedly impermissible participation therefore would have been a futile

objection unsupportive of an ineffective assistance of counsel claim. *See Premo v. Moore*, 562

U.S. 115, 124 (2011). Hawkes has therefore shown neither deficient performance of counsel nor

prejudice and Claim Three (a) will be DISMISSED.

**C.  Claim Three (b)**

Claim Three (b), in which Hawkes claims that his attorney did not adequately advise him

about the charge to which he was pleading guilty or the penalties associated with that charge, is

also without merit. Indeed, at the Rule 11 hearing, Hawkes swore that he had "had a sufficient

opportunity to discuss with [his] attorney everything about the case, including any possible

offenses" and "how the sentencing guidelines [would] be determined." (ECF No. 45, at 11.)

Hawkes made this affirmation after previously swearing to the Court that he understood he was

pleading guilty to Count Four and understood the possible range of penalties he faced. (*See* ECF

No. 45, at 10.) Accordingly, Claim Three (b) is palpably incredible and belied by the record.

*See Lemaster*, 403 F.3d at 221–22. For this reason, Claim Three (b) will be DISMISSED.

**D.  Claim Three (c)**

The Court concludes that Claim Three (c), in which Hawkes asserts that his lawyer told

him to "just say yes" even when confused, is also without merit because the record does not

support his claim and Hawkes fails to overcome the weight of his sworn statements at the plea

colloquy. Indeed, although Hawkes provided simple, affirmative responses to many of the

Court's questions, the record belies his contention that he was "clearly confused" during the plea

20

colloquy. Demonstrating his understanding of the proceedings and posture of his case, Hawkes

provided clarifying information in response to a question about his communications with his

attorney:

> THE COURT:        So Mr. Hawkes, we're going to talk again about what
> we talked about on Friday. So what I want you to know is that you're not required
> to plead guilty. You're not required to take this plea agreement. And the thing I
> really want to hear from you about is your working relationship with Mr. Gavin,
> because there was representation on Friday at the beginning of the hearing that you-
> all were not communicating, and you said differently at the end of the hearing. But
> I need to be sure that you're still like you were at the end of the hearing. We gave
> you this period of time to talk about it. So can you just say to me how you feel
> about Mr. Gavin's representation?
>
> DEFENDANT:        I'm satisfied with Mr. Gavin.
>
> THE COURT:        Okay.
>
> DEFENDANT:        Yes, ma'am.
>
> THE COURT:        And you're satisfied you understand everything that
> he talked to you about?
>
> DEFENDANT:        Yes, ma'am.
>
> THE COURT:        And you understand what he went through with you
> about the plea and the statement of facts?
>
> DEFENDANT:        Yes, ma'am. We got through that. We wasn't
> communicating, but …
>
> THE COURT:        But then later on, you were?
> DEFENDANT:        Yes, ma'am.
>
> THE COURT:        I shouldn't finish that for you. But you've gotten
> through them now?
>
> DEFENDANT:        Yes, ma'am.

(ECF No. 45, at 4–5.)

Moreover, when asked if "there ha[d] been any different or additional promises or even

threats to get [him] to plead guilty," Hawkes responded "No, Your Honor." (ECF No. 45, at 17.)

And on the single occasion the Court observed any hesitancy from Hawkes, it encouraged him to speak with his attorney and stated, "So I don't want you pleading guilty if you're not guilty of it. All right? So you can talk to your lawyer and take a minute." (ECF No. 45, at 13.) Rather than doing so, Hawkes responded, "I'm guilty of it, Your Honor." (ECF No. 45, at 13.) The record therefore belies Claim Three (c), which is palpably incredible in light of Hawkes's assertions at the Rule 11 hearing. *See Lemaster*, 403 F.3d at 221–22; *Pierre-Louis v. United States*, No. 20 CV 3010 (CM), No. 16 CR 541 (CM), 2022 WL 1186020, at *3 (S.D.N.Y. Apr. 21, 2022) (denying ineffective assistance claim based on attorney's alleged instructions to "just say yes" where defendant had "provided narrative responses" to questions "and gave negative answers when asked whether there were any 'side deals' . . . or whether any threats or promises had been made to induce him to change his plea"); *McNair v. United States*, No. CV 118-068, 2019 WL 1497058, at *14 (S.D. Ga. Feb. 13, 2019) (concluding that petitioner could not "now disclaim the answers he gave [the judge] under oath by merely alleging [that his attorney] told him to commit perjury [by simply answering 'yes' to the judge's questions]"). Claim Three (c) lacks merit and will accordingly be DISMISSED.

### E. **Claim Three (d)**

Finally, in Claim Three (d), Hawkes asserts that his counsel failed to appeal his conviction despite having been told to do so. (*See* ECF No. 41, at 7.) An attorney's failure to file a requested appeal is *per se* ineffective assistance of counsel. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483–86 (2000). The Fourth Circuit has explained that "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

22

Here, the § 2255 Motion is devoid of any specific factual allegations supporting Claim Three (d). Indeed, Hawkes has provided the Court with no more than the legal standard for an ineffective assistance claim in this regard. Accordingly, by Memorandum Order entered on September 2, 2025, the Court directed Hawkes to file the following submissions, within fourteen (14) days of the entry thereof:

1.  Copies of any records or correspondence that supports his assertion that he conveyed to counsel his desire to file an appeal.

2.  A statement reciting any communications Hawkes had with counsel concerning Hawkes's instructions to counsel regarding an appeal. The statement must include a verbatim account of what Hawkes said to his attorney and the exact responses from his attorney. The statement must recite the date and locations of any conversations that took place. Additionally, Hawkes must identify what efforts he made to ascertain whether his attorney had filed an appeal. Hawkes must explain when and why he first suspected that counsel had not filed an appeal. Such statement must be in affidavit form and/or sworn under the penalty of perjury.

(ECF No. 52, at 2) (footnote omitted). At that time, the Court warned Hawkes that his failure to comply with the above directives would result in the summary dismissal of the action with respect to Claim Three (d). (ECF No. 52, at 2.)

More than three months have elapsed since entry of the Court's September 2, 2025 Memorandum Order and Hawkes has failed to respond or otherwise communicate with the Court about Claim Three (d). Accordingly, Claim Three (d) will be DISMISSED.

## IV. Conclusion

For the foregoing reasons, the § 2255 Motion (ECF No. 41) will be DENIED. Hawkes's

claims will be DISMISSED. A certificate of appealability will be DENIED.[5]

An appropriate Final Order will accompany this Memorandum Opinion.

/s/

M. Hannah Lauck
Chief United States District Judge

Date: 12/15/2025
Richmond, Virginia

---

[5] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Hawkes has not satisfied this standard.